458 So.2d 894 (1984)
D.O. CREASMAN ELECTRONICS, INC., Appellant,
v.
STATE of Florida DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, DIVISION OF UNEMPLOYMENT COMPENSATION, Appellee.
No. 84-624.
District Court of Appeal of Florida, Second District.
November 16, 1984.
*895 Ralph E. Moon, Jr., P.A., Palm Harbor, for appellant.
Alex D. Littlefield, Jr., Tallahassee, for appellee.
GRIMES, Judge.
This is an appeal from an order of the Department of Labor and Employment Security, Division of Unemployment Compensation, adopting the special deputy's recommendation that certain individuals performing services for appellant as cable splicers are "employees" under section 443.036(17), Florida Statutes (1983).

FINDINGS OF FACT
The special deputy made the following comprehensive findings of fact:
The Petitioner [appellant] operates in several states and is primarily a contractor with various telephone companies. The individuals involved in this case are "cable splicers" and the telephone companies routinely contract a substantial amount of the outside cable work to such companies as the Petitioner. The Petitioner does have some cable splicers who are employees who are subject to the direct control of both the Petitioner and the telephone company and work on a routine schedule. These individuals are not involved in this matter. There are other cable splicers referred to as "unit men" who are considered independent contractors. These are the ones involved in this proceeding. The unit men are qualified professionals who do not need routine supervision in performing the work. The unit men generally handle the surplus work that the employees are unable to handle. The unit men "bid" on each job individually and there is no set price for any particular operation. They are given a starting date and a completion date and they are expected to complete the work within the time frame. If they fail to do so there can be financial penalties. Some of the unit men work by themselves and others have helpers. If there are any helpers they have to complete a subcontractor employee identification *896 information form which is turned in to the Petitioner. If a unit man needs helpers on a particular job, it is up to him to bid enough money for the job to include their pay. These unit men are performing work for the telephone company and the telephone company has strict standards. The Petitioner's name must be on their personal truck and they are required to wear a badge with their picture on it identifying them as representatives of the telephone company. The unit men must furnish all tools and equipment required to perform the work. This includes the truck, temporary and permanent tools, scaffolding, power, water pumps, etc. A unit man would normally have between $15,000 and $25,000 invested in his truck and tools. The telephone company in the area has rigid standards as to work performance, dress, and conduct generally and would take action to have conduct corrected, through the Petitioner, if it became necessary. The telephone company inspectors do watch the jobs closely. If a unit man does defective work he can be required to redo it with no additional compensation. If they refuse to redo such work then the Petitioner keeps the retainage of the contract price as a penalty. If they are sick and unable to work, they must get their own replacement. They are obligated to complete the work within the contracted period of time. The unit men are required to obtain their own workers compensation and general liability insurance and also an occupational license to allow them to do the work. Failure to obtain these things could result in termination of the contract and the Petitioner would not offer any more contracts until they had the necessary insurance. The Petitioner drew up a written agreement after the Joined Party in this matter generated the issue by filing an unemployment compensation claim. This written agreement basically sets forth the conditions under which they had been working in the past and would continue working in the future. The Petitioner has entered into a prime contract with the telephone company to furnish certain materials, labor, and services necessary for the work. The telephone company furnishes all materials in connection with the work and there can be no substitution of such materials. The written contract goes on to provide that the work shall be done to the satisfaction of both the Petitioner and the telephone company in accordance with the telephone company's standards. It provides that the unit men shall check and verify all previous work done in the area to make sure it is correct. It also provides that the unit men shall perform all work under the contract and they may not themselves subcontract the work to a third party. The unit men are required to retain all records regarding each contract for three years and the Petitioner has the right to inspect all books, records, receipts, accounts, etc., concerning any of the unit men's business with the Petitioner. The unit men agree to have someone on the project at all times. The unit men may not interfere in the relationship between the Petitioner and the telephone company and the unit men may not contract directly with the telephone company without the Petitioner's consent. It provides that the Petitioner shall furnish and pay for all materials and other facilities (actually provided for by the telephone company) including temporary and permanent repaving. The Petitioner has the right to inventory any unit man's vehicle before, during, and after work. The Petitioner obtains all permits necessary for completion of the work; however, the unit men must obtain the necessary licenses and permits regarding moving his equipment and setting up in a particular location. Both the Petitioner and the telephone company have access to the work at all times for the purpose of inspection. The Petitioner has the right to cancel work being done under any particular agreement at any time. The unit men will be paid for work completed up to the point of cancellation. As far as the unit men getting paid is concerned, they submit a weekly *897 invoice of work completed during the week and are paid on that basis. Before the unit men can work they must sign the Petitioner's code of ethics and business standards if the telephone company requires it.
The special deputy neglected to note that when appellant cancelled a contract before its conclusion, the cable splicer would be reimbursed for his labor and costs expended to date plus ten percent. Otherwise, the findings of fact are fully supported by the record.

APPLICABLE LAW
Section 443.036(17), Florida Statutes (1983), defines employment to include any service by an "individual who, under the usual common law rules applicable in determining employer-employee relationship, has the status of an employee." The term "usual common law rules" is to be used in a generic sense to mean the standards developed by the courts through the years of adjudication. United States v. W.M. Webb, Inc., 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970).
In Cantor v. Cochran, 184 So.2d 173 (Fla. 1966), the Supreme Court of Florida reaffirmed its adoption of the criteria formulated by 1 Restatement (Second) of Agency section 220 (1958) in resolving the issue of whether an employee-employer relationship exists under Florida law. Here, in holding that the cable splicers were employees, the special deputy applied each of the Restatement tests to the facts before him. We shall do likewise, but in so doing we reach the opposite conclusion.
"(a) The extent of control which, by the agreement, the master may exercise over the details of the work."
The special deputy noted that each job is checked for correctness and if done improperly could be required to be redone. He equated this situation with the direct supervisory function of an employer over his employee. In this respect he misapprehended the primary distinction between an employee and an independent contractor. If a person is subject to the control or direction of another as to his results only, he is an independent contractor; if he is subject to control as to the means used, he is an employee. Collins v. Federated Mutual Implement & Hardware Insurance Co., 247 So.2d 461 (Fla. 4th DCA), cert. denied, 249 So.2d 689 (Fla. 1971). In this case the cable splicers work on their own schedules, and neither the appellant nor the telephone company exercises control over the means by which they perform their services.
"(b) Whether or not the one employed is engaged in a distinct occupation or business."
As related to the case at hand, this test is inconclusive. Cable splicing may be viewed as a distinct occupation, though it is not as definitive as many others.
"(c) The kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision."
As noted by the special deputy, cable splicers are highly skilled specialists who routinely work without supervision.
"(d) The skill required in the particular occupation."
Once again, the special deputy correctly noted that substantial skill is required to do the work.
"(e) Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work."
For purposes of our analysis, the materials furnished by the telephone company for the work might be considered as being supplied by the appellant. However, the cable splicers furnish all of their tools as well as their trucks. The use of appellant's logo on the trucks has little significance except to alleviate the fears of telephone customers concerning unauthorized persons in the neighborhood. Hilldrup Transfer & Storage of New Smyrna Beach, Inc. v. State, Department of Labor and Employment Security, 447 So.2d 414 (Fla. 5th DCA 1984).

*898 "(f) The length of time for which the person is employed."
The jobs vary in length from as short as two days to as long as six months.
"(g) The method of payment, whether by time or by the job."
Each job is bid on the basis of a flat sum to be paid for the total amount of the work.
"(h) Whether or not the work is part of the regular business of the employer."
On this record it appears that appellant's sole business in Florida is cable splicing. This is the only factor clearly favoring the conclusion that the cable splicers are employees.
"(i) Whether or not the parties believe they are creating the relation of master and servant."
Clearly, the parties believe that the cable splicers are independent contractors. The appellant does not provide medical insurance for them. The appellant does not withhold any federal income tax or social security from the amount paid to them. The cable splicers pay for their own workmen's compensation insurance and comprehensive general liability insurance. They must also obtain their own occupational licenses.
"(j) Whether the principal is or is not in business."
The relevance of this factor is obscure, but for what it is worth, appellant is in business.

CONCLUSION
Measured against the Restatement criteria, we believe that the cable splicers are independent contractors. There are also additional circumstances which support this conclusion. None of their work is done on appellant's premises. The cable splicers sometimes do work for several primary contractors at the same time. Some of them even hire their own employees. Though portions of the contract price are paid periodically for work completed to date, there is no advance draw against the anticipated payment. Appellant withholds twenty percent of the contract price until the work is completed and the results are found to be satisfactory. Appellant's ability to terminate a cable splicer's contract if the desired result is not being accomplished is no different than a contractor's right to declare his subcontractor in breach of contract for unsatisfactory work. See Jagolinzer v. United States, 150 F. Supp. 489 (D.R.I. 1957).
Our holding is consistent with other Florida unemployment compensation cases involving the issue of whether certain persons were independent contractors. VIP Tours of Orlando, Inc. v. State, Department of Labor & Employment Security, 449 So.2d 1307 (Fla. 5th DCA 1984) (tour company not deemed employer of tour guides using company vehicles who worked on a per job basis); A Nu Transfer, Inc. v. Department of Labor & Employment Security, 427 So.2d 305 (Fla. 3d DCA 1983) (owner-operators who drove their trucks on their own time and at their own expense under contracts terminable at will with an inland carrier for the shipment of freight held to be independent contractors); United States Telephone Co. v. State, Department of Labor & Employment Security, 410 So.2d 1002 (Fla. 3d DCA 1982) (commission salesman who worked without supervision held to be independent contractor even though telephone company furnished office space and clerical assistance without charge); Cosmo Personnel Agency of Fort Lauderdale, Inc. v. State, Department of Labor & Employment Security, 407 So.2d 249 (Fla. 4th DCA 1981) (employment counselors deemed not to be employees of employment agency despite the furnishing of secretarial help, office space, and phone service, the use of the employment agency's trade name, and the fact that either party could cancel the contract without cause); Florida Gulf Coast Symphony, Inc. v. Department of Labor & Employment Security, 386 So.2d 259 (Fla. 2d DCA), petition for review denied, 389 So.2d 1108 (Fla. 1980) (musicians engaged under seasonal contracts to play concerts for symphony company at specified times *899 and places under the direction of a company conductor deemed independent contractors because of their skill, the furnishing of their own instruments, and their ability to work for others at the same time); Jean M. Light Interviewing Services, Inc. v. State, Department of Commerce, 254 So.2d 411 (Fla. 3d DCA 1971) (interviewers who contracted for each job and conducted the interviews without supervision held to be independent contractors even though interviewing was the principal business of the party asserted to be the employer). Significantly, in each of the cases cited above, the court reversed the finding of an employer-employee relationship.
We hold that the cable splicers are not appellant's employees for purposes of the Unemployment Compensation Law.
Reversed.
BOARDMAN, A.C.J., and SCHOONOVER, J., concur.