463 So.2d 461 (1985)
The SARASOTA COUNTY CHAMBER OF COMMERCE, Appellant,
v.
STATE of Florida, DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, DIVISION OF UNEMPLOYMENT COMPENSATION, Appellee.
No. 84-1179.
District Court of Appeal of Florida, Second District.
February 6, 1985.
Michael R. Miller of Kunkel & Miller, Sarasota, for appellant.
Alex D. Littlefield, Jr., Tallahassee, for appellee.
GRIMES, Acting Chief Judge.
The Sarasota County Chamber of Commerce seeks review of a final agency order determining that its salespersons are "employees" under section 443.036(17), Florida Statutes (1983).
The Division of Unemployment Compensation adopted the findings of fact of the special deputy which are set forth below:
The Petitioner is the oldest corporation in Sarasota County. It was organized to represent that county's businesses and professions, establishing policies on important issues, initiating action in governmental and community programs and operating programs of economic and community development. In order to accomplish these goals, the Petitioner requires as many members as possible from the professional and business community. To this end, the Petitioner contracts with approximately four individuals who prospect and solicit new and renewed memberships from that community and attempt to retain those members. They also solicit special projects for the Petitioner.
The Petitioner recruits salespersons by placing ads in the local newspaper and selecting from applicants, those with successful sales records. A written contract is consummated between the parties. The new salesperson is then given a thorough explanation of the function of the Chamber. He is provided with several *462 examples of presentations which may be utilized in selling to prospects, if he so desires. There is no direct supervision of these salespersons and there is no monitoring of the presentation used by them. The Petitioner provides office space and telephones for use by the salespersons, however, their actual selling efforts take place by personal contact with the prospect. The salespersons set their own schedules and contact prospects throughout Sarasota County and any Sarasota businesses in Manatee County. They furnish their own transportation and pay any related expenses incurred. They dress in whatever fashion they desire, as they do contact all types of businesses and they contact whomever they wish. In their contacts, the salespersons present themselves as marketing representatives for the Petitioner. Occasionally, a salesperson may be given a lead by the Petitioner regarding a possible prospect. They may also hire assistants if they wish and may contract with others in the same manner. Meetings are conducted every Friday to present any new projects of the Chamber and to give a "pep talk" to the salespersons, but it is not mandatory for the salespersons to attend.
There is a standard rate for memberships set by the Petitioner. As the salespersons secure membership applications and payment checks from prospects, they present the paperwork and checks to the Director of Marketing at whatever intervals they wish. These applications are then submitted to the Board of Directors for consideration and approval. If approved, the salespersons receive varying commissions on the memberships they secure. The percentage of commission for each salesperson may be negotiated but normally is not, as a bonus system also exists whereby salespersons receive increasing bonuses for consecutive weeks in which five or more sales are made. No withholding or social security tax is deducted from the commissions paid to the salespersons. In order to receive renewal commissions, a salesperson must sell $5,000 yearly in memberships. If a salesperson fails to sell $1,500 in new memberships for two consecutive months, he will be placed on a thirty day probationary period and his contract will be subject to cancellation. Upon contracting with the Petitioner, each salesperson signs a statement declaring himself to be an independent contractor. The contract allows cancellation by either party without cause or liability. Generally, termination of that contract occurs when a salesperson simply "disappears" and is no longer heard from. However, the Petitioner has terminated at least two salespersons in the past. On one occasion, the Petitioner received multiple complaints that a particular salesperson had been abusive to prospects. On a second occasion, a salesperson was not selling and was becoming a nuisance in the office.
The Chamber does not contest the findings of fact. Rather, it argues that under existing law these facts demonstrate that the salespersons were independent contractors. We agree.
The principal consideration in determining whether one is working as an independent contractor or as an employee is the right of control over his mode of doing the work. If a person is subject to the control or direction of another as to his results only, he is an independent contractor. Collins v. Federated Mutual Implement & Hardware Insurance Co., 247 So.2d 461 (Fla. 4th DCA), cert. denied, 249 So.2d 689 (Fla. 1971). Here, there is no meaningful supervision over the salespersons' work. They set their own schedules and contact such prospects as they please. While the Chamber offers some examples of presentations which may be utilized, the salespersons are free to solicit prospects in whatever manner they deem to be effective. There is no monitoring of the presentations actually used. The salespersons furnish and pay for their own transportation. They dress in whatever fashion they desire. They are also free to hire others at their own expense. Their compensation *463 comes from commissions on the new and renewed memberships which they obtain. Though not mentioned by the special deputy, some of the salespersons also work for other organizations. It is evident that the performance of the salespersons is measured only by the results they accomplish.
The Division relies heavily upon the Chamber's response to one of twenty-nine questions in a questionnaire which was submitted to the Chamber prior to the commencement of these proceedings. The question asked was, "Who supervises workers' work," and the answer given was "membership director." The Division then refers to a dictionary definition of "supervisor" as meaning to "coordinate, direct and inspect continuously and at first hand the accomplishment of: oversee with the power of direction and decision the implementation of one's own and another's intentions." This is a tenuous basis upon which to impose liability for unemployment compensation premiums. In the first place, the question is leading in that it presupposes supervision by someone. An entirely negative response would be required in order to rebut the inference of the question. Moreover, the Chamber's representative who filled out the questionnaire testified that in answering the question he interpreted supervision to mean only the activities of the membership director in selecting the salespersons, conducting the sales meetings and receiving the membership applications. The evidence in the record belies any supervision of the kind normally associated with an employer-employee relationship.
Though different work was involved, this case involves many of the same considerations which prompted us to reverse the Division in D.O. Creasman Electronics, Inc. v. State, Department of Labor & Employment Security, 458 So.2d 894 (Fla. 2d DCA 1984). We find it apropos to quote a passage from that decision:
Our holding is consistent with other Florida unemployment compensation cases involving the issue of whether certain persons were independent contractors. VIP Tours of Orlando, Inc. v. State, Department of Labor & Employment Security, 449 So.2d 1307 (Fla. 5th DCA 1984) (tour company not deemed employer of tour guides using company vehicles who worked on a per job basis); A Nu Transfer, Inc. v. Department of Labor & Employment Security, 427 So.2d 305 (Fla. 3d DCA 1983) (owner-operators who drove their trucks on their own time and at their own expense under contracts terminable at will with an inland carrier for the shipment of freight held to be independent contractors); United States Telephone Co. v. State, Department of Labor & Employment Security, 410 So.2d 1002 (Fla. 3d DCA 1982) (commission salesman who worked without supervision held to be independent contractor even though telephone company furnished office space and clerical assistance without charge); Cosmo Personnel Agency of Fort Lauderdale, Inc. v. State, Department of Labor & Employment Security, 407 So.2d 249 (Fla. 4th DCA 1981) (employment counsellors deemed not to be employees of employment agency despite the furnishing of secretarial help, office space, and phone service, the use of the employment agency's trade name, and the fact that either party could cancel the contract without cause); Florida Gulf Coast Symphony, Inc. v. Department of Labor & Employment Security, 386 So.2d 259 (Fla. 2d DCA), petition for review denied, 389 So.2d 1108 (Fla. 1980) (musicians engaged under seasonal contracts to play concerts for symphony company at specified times and places under the direction of a company conductor deemed independent contractors because of their skill, the furnishing of their own instruments, and their ability to work for others at the same time); Jean M. Light Interviewing Services, Inc. v. State, Department of Commerce, 254 So.2d 411 (Fla. 3d DCA 1971) (interviewers who contracted for each job and conducted the interviews without supervision held to be independent contractors even though interviewing was the principal business of the party asserted to be the *464 employer). Significantly, in each of the cases cited above, the court reversed the finding of an employer-employee relationship.
458 So.2d at 898-899. We hold that the salespersons are not the Chamber's employees for purposes of the Unemployment Compensation Law.
Reversed.
SCHEB and SCHOONOVER, JJ., concur.