SMITH, Judge.
Appellant Department of Health and Rehabilitative Services (HRS) appeals from a determination by appellee Department of Labor and Employment Security, Division of Employment (Division) that persons hired by HRS pursuant to Florida Administrative Code, Rule 100-20.10-14 as “housekeepers” for families eligible for HRS benefits are considered “employees” within the meaning of Section 443,036(17), Florida Statutes (1981), thereby rendering HRS liable for contributions to the Unemployment Compensation Trust Fund pursuant to Section 443.131, Florida Statutes (1981). The Division’s conclusion was upheld by a special deputy of the Bureau of Appeals of the Department of Labor and Employment Security after a hearing conducted pursuant to Section 443.141(2), Florida Statutes (1981). We reverse.
A claim for unemployment compensation was filed with the Division by Laura Medley (claimant) on October 11, 1983, after she was terminated from her position as a house parent at a state training school for juvenile delinquents operated by HRS. Claimant had previously been employed by HRS under two separate employment agreements as a “housekeeper” assigned to families already receiving HRS financial assistance. In this capacity, claimant was to function primarily as a teacher, instructing the family on the rudiments of cooking, housecleaning, shopping, and so forth.
Claimant was initially hired as part of HRS’s housekeeper program on February 7, 1983. The hiring agreement was silent as to the total working hours per week contemplated by the parties, although a twenty hour per week minimum was set. Claimant’s duties were formally listed as “transport, help with housekeeping, and child care.” She received no training; nor was she issued a uniform or other equipment by HRS to assist her in the performance of her duties, with the exception of an HRS identification card which she could utilize to request prescriptions for the family. Claimant further testified that no particular length of employment was specified to her by HRS; rather, it was agreed that she would continue employment as a housekeeper until the family being monitored had stabilized. She testified that she was required by her HRS supervisor to file daily reports regarding her work, and that she was occasionally visited by her supervisor in the family home. However, claimant testified, the specific techniques she utilized in fulfilling her housekeeper duties were neither commented upon nor modified by her HRS supervisor.
After being terminated from her first housekeeper job on April 3, 1983, claimant and HRS entered into a second housekeeper agreement, which lasted from April 4, 1983, until July 8, 1983. Claimant’s new HRS supervisor, Donna Boyd, provided additional testimony regarding the terms and conditions of claimant’s employment status. Ms. Boyd’s testimony indicated that housekeepers were not considered full-time members of the HRS staff. Rather, they were hired periodically as, in the opinion of HRS caseworkers, they were needed. As to their hours of employment, Mrs. Boyd testified that a certain minimum weekly total was found in the employment agreement between the parties, but that flexible work hours were contemplated, based upon an individual family’s needs. Both Ms. Boyd and claimant testified that assignments by HRS of a housekeeper to a given family had to be approved” by both the housekeeper and the family involved, and that housekeepers could refuse an assignment without fear that they would no longer be considered for future work. In this regard, *1286 Ms. Boyd testified, full-time HRS personnel had no such option to refuse a given family as part of their caseload. Ms. Boyd also testified that housekeepers were not eligible for fringe benefits, such as medical and dental care, available to full-time HRS personnel, and that housekeepers were not required to run errands for the families or otherwise incur personal expenses in performing their duties, since these expenses would not be reimbursed by HRS.
The proper factors to be considered in determining whether an employer-employee relationship exists were listed in Cantor v. Cochran, 184 So.2d 173 (Fla.1966). We recognize that the question of whether a person is properly classified an employee or an independent contractor often cannot be answered by reference to “hard and fast” rules, but rather must be addressed on a case-by-case basis. La Grande v. B & L Services, Inc., 432 So.2d 1364, 1366 (Fla. 1st DCA 1983). However, the case law clearly establishes that the degree of control exercised by the engaging party (an employer, or a contractee) over the work is the factor upon which primary significance must be placed by a reviewing court. Strickland v. Progressive American Insurance Company, 468 So.2d 525 (Fla. 1st DCA, 1985); Sarasota County Chamber of Commerce v. State, Department of Labor and Employment Security, 463 So.2d 461, 462 (Fla. 2d DCA 1985). When the engaging party concerns himself only with the final product or result of the worker’s efforts, the relationship is that of a contractor-independent contractor. D.O. Creasman Electronics v. State, Department of Labor and Employment Security, 458 So.2d 894, 897 (Fla. 2d DCA 1984); Hilldrup Transfer v. State, Department of Labor and Employment Security, 447 So.2d 414, 417 (Fla. 5th DCA 1984); see also La Grande, supra, at 1367 (“... the decisive question [is] who has the right to direct what shall be done, and how and when it shall be done”) (citations omitted). On the other hand, where the engaging party seeks to direct the details involved in the work, then the worker is more likely to be considered an employee. Cos-mo Personnel Agency of Fort Lauderdale, Inc. v. State, Department of Labor and Employment Security, 407 So.2d 249 (Fla. 4th DCA 1981); compare T & T Communications v. State, Department of Labor and Employment Security, 460 So.2d 996, 998 (Fla. 2d DCA 1984). Here, the special deputy concluded from the previously-recited facts concerning Laura Hed-ley’s employment that HRS “maintained total control over the [claimant’s] work.” We find that conclusion cannot be supported by the facts in evidence.
The special deputy evidently mis-perceived the legal significance of the reporting requirement HRS imposed upon claimant, as well as the periodic visits to the families’ homes made by HRS supervisory personnel; that is, the distinction between rudimentary supervision and control. As to the former, the fact that a worker must submit reports “as required” by the engaging party does not, without more, constitute control over the methods used by the worker in accomplishing the results sought. Hilldrup Transfer, supra, at 417. Instead, the engaging party must seek, through the reporting requirement, to direct the actual conduct of the worker. La Grande v. B & L Services, Inc., supra, at 1367. As to the latter, the evidence does not establish that HRS used the visits by its supervisors for surveillance of claimant’s operating procedures. On the contrary, Ms. Boyd testified that the visits were meant to monitor the progress of the families involved. According to her, the only purpose involved in the visits by claimant’s supervisors was to solicit opinions from the families being serviced regarding possible discipline and/or termination of claimant’s employment contract should the complaints indicate that progress was not being made, since the arrangement between claimant and HRS allowed both the claimant and the family freedom to accept or reject claimant’s assignment as a housekeeper. See Burnup and Sims v. State, Department of Labor and Employment Security, 459 So.2d 447, 448 (Fla. 2d DCA 1984) (special deputy misconstrued tele *1287 phone company’s inspection of results of cable splicer’s work as a demonstration of control over the means by which the work was performed); compare VIP Tours of Orlando, Inc. v. State, Department of Labor and Employment Security, 449 So.2d 1307 (Fla. 5th DCA 1984) (extent of supervision of tour guide was to assure timely departure and to discipline tour guide if significant complaints received regarding his or her performance). Here, it is clear that HRS did not exercise a degree of control over claimant’s activities that would allow her to be characterized as an employee of HRS.
Other factors cited by the Florida Supreme Court in Cantor v. Cochran, supra, support our conclusion that claimant was an independent contractor for HRS. For example, claimant had the discretion to accept or reject an assignment from HRS regarding particular families. Jean M. Light Interviewing Services, Inc. v. State, Department of Commerce, 254 So.2d 411 (Fla. 3d DCA 1971). Moreover, although claimant was compensated based upon an hourly wage, she was also required to work overtime without compensation, and to pay for her own expenses incurred during working hours. Moreover, she did not receive fringe benefits, such as insurance, as part of her compensation, and had no taxes withheld from her pay check. See, VIP Tours, supra. Finally, claimant’s job was not a regular part of HRS’s business, but rather was temporary in nature, ceasing when the families served had become self-sufficient in terms of homemaking.
We reiterate that we do not quarrel with the findings of fact made by the special deputy below, but rather disagree with his conclusion of law that the Division correctly classified claimant as an employee for purposes of unemployment tax liability pursuant to Chapter 443. We find support for our conclusion in the long line of Florida cases dealing with the question of whether an individual is, in a given case, an employee or an independent contractor. See Sarasota County, supra, at 463-464 (collecting cases).
Accordingly, we hold that “housekeepers” utilized by HRS pursuant to Florida Administrative Code, Rule 100-20.10-14, when carrying out their duties under the conditions disclosed by the instant record, are not “employees” for purposes of the Unemployment Compensation Law, Chapter 443, Florida Statutes (1981).
REVERSED.
MILLS and THOMPSON, JJ., concur.