GRIMES, Acting Chief Judge.
This is an appeal from an order of the Department of Labor and Employment Security, Division of Unemployment Compensation, adopting the special deputy’s recommendation that certain individuals performing piecework services for appellant are employees under section 443.036(17), Florida Statutes (1985).
At the outset, we note that the order encompasses both drywall hangers and drywall finishers, whereas at the hearing the special deputy specifically announced that the case involved only drywall hangers.
The parties are in essential agreement concerning the facts of the case.
Appellant, Quality Drywall Contractors, Inc., is engaged in drywalling, metal framing, furring, and stucco work for residential and commercial projects. Appellant employs a number of drywall hangers who fall into two categories: (1) hourly or salaried workers which it agrees are employees covered under the Florida Unemployment Compensation Law and for whom it has paid unemployment taxes, and (2) pieceworkers which it claims are independent contractors and, therefore, excluded from coverage under the unemployment compensation law.
The hourly or salaried workers have the following characteristics:
(a)Appellant pays them on either an hourly or salary basis and compensates them with overtime pay for hours worked above their scheduled working hours.
(b) They receive fringe benefits, including hospitalization insurance, vacation pay, retirement benefits, and profit sharing benefits.
(c) The hourly drywall hangers work on commercial projects where the general contractor requires the drywall hangers to be hourly employees.
(d) They must adhere to strict daily work schedules and work a full eight-hour day.
(e) Appellant requires them to comply with a dress code.
(f) A project foreman is present on site all day to supervise their work.
The pieceworkers have the following characteristics:
(a) They provide services on a temporary, per job basis.
(b) The pieceworkers do not complete job applications for employment with appellant. Rather, they sign an independent contractor agreement on an annual basis. The agreement specifies that the parties intend that an independent contractor relationship be established rather than an employment relationship. Additionally, the contract stipulates that the pieceworker will be responsible for all fringe benefits and taxes, and requires that the pieceworker pay damages to appellant in the event of a breach of contract.
(c) In order to contract with appellant, one of the parties contacts the other. Then, the pieceworker inspects the job site and tells appellant whether he will accept the job and how long it will take to complete it.
(d) The pieceworkers are not guaranteed a minimum pay. Instead, each pieceworker negotiates with appellant regarding the price per board which the pieceworker will receive plus any extra payments for performing special or difficult work. The going rate in the trade for standard work is between $2.25 and $2.50 per board. However, several drywall hangers on the same job may be paid differently because of the *146 outcome of their negotiations with appellant.
(e) The pieceworkers work for several different drywall contractors. For example, Charles Meyer, who testified at the hearing, worked for five or six separate drywall contractors.
(f) The pieceworkers provide their own tools. Meyer estimated that his tools were worth $210. Appellant supplies screws, nails, boards, and sometimes scaffolding.
(g) To increase their profit, many pieceworkers work with a partner of their own choosing or hire helpers at various rates. Appellant pays only the negotiated price per board to the pieceworker who divides the fee with his helpers or partners as he chooses. At the pieceworker’s request, appellant will provide separate checks to the partners or helpers and deduct the amount from the pieceworker’s earnings. A pieceworker can arrange for a substitute to perform his services in the event that he is unable to work.
(h) Once the pieceworker has contracted to perform a job for appellant, the pieceworker reports directly to the job site each day to perform work and is not required to report to appellant’s business offices to obtain instructions.
(i) The work at the job site is coordinated by the general contractor or owner of the project. Appellant does not set deadlines for the pieceworker. However, prior to the job the pieceworker may negotiate with appellant for extra time to complete the job.
(j) The pieceworkers have no regularly scheduled working hours, but rather choose their own working hours. For example, Meyer held a full-time job in the afternoon and chose his own working hours to accommodate the hours of his job.
(k) Appellant does not provide any fringe benefits, breaks, vacations, training, partial pay, draws against future earnings, reimbursement for job-related expenses, or minimum quotas for the pieceworkers, and does not deduct employment or social security taxes from the pieceworker’s pay.
(l) The general contractor at each site requires that each worker have worker’s compensation insurance. Through deductions in their pay, the pieceworkers pay worker’s compensation premiums to appellant in order to be covered by appellant’s worker’s compensation policy.
(m) Appellant has no dress code for the pieceworkers.
(n) If the pieceworkers produce defective work, they are required to buy new boards and to rework the job without extra pay.
(o) If a pieceworker has misrepresented his skills to appellant and is not qualified to hang drywall, appellant terminates the pieceworker’s contract and finds a qualified pieceworker.
(p) When performing services for a drywall contractor, the pieceworker will usually tell anyone inquiring that he is performing work for that drywall contractor. Appellant has never instructed its pieceworkers to use the Quality Drywall name. When not performing work for a drywall contractor, the pieceworker will use his own trade name to attract business.
(q) A representative of appellant, called a superintendent, visits the pieceworkers on site once a day. The purpose of this visit is to ensure that sufficient materials are available to the pieceworker and to communicate to him any special requirements by the general contractor or owner. Additionally, the superintendent reviews the quality and timeliness of the work. However, the superintendent neither trains the pieceworkers nor advises them on how to perform their job, or how to improve the quality of their work.
(r) If the pieceworker performs a good job for appellant, appellant will call that pieceworker again for other jobs. However, pieceworkers are not guaranteed continued work.
Appellant contends that these facts demonstrate that the pieceworkers were independent contractors as a matter of law. We agree.
*147 It is unnecessary to discuss the law which compels this conclusion because there are many reported decisions on the subject. Unique Construction Co. v. State, Department of Labor & Employment Security, 472 So.2d 1349 (Fla. 2d DCA 1985); Lenox v. Sound Entertainment, Inc., 470 So.2d 77 (Fla. 2d DCA 1985); Sarasota County Chamber of Commerce v. State, Department of Labor & Employment Security, 463 So.2d 461 (Fla. 2d DCA 1985); T & T Communications, Inc. v. State, Department of Labor & Employment Security, 460 So.2d 996 (Fla. 2d DCA 1984); Burnup & Sims Com Tec, Inc. v. State, Department of Labor & Employment Security, 459 So.2d 447 (Fla. 2d DCA 1984); D.O. Creasman Electronics, Inc. v. State, Department of Labor & Employment Security, 458 So.2d 894 (Fla. 2d DCA 1984); VIP Tours of Orlando, Inc. v. State, Department of Labor & Employment Security, 449 So.2d 1307 (Fla. 5th DCA 1984); A Nu Transfer, Inc. v. State, Department of Labor & Employment Security, 427 So.2d 305 (Fla. 3d DCA 1983); United States Telephone Co. v. State, Department of Labor & Employment Security, 410 So.2d 1002 (Fla. 3d DCA 1982); Cosmo Personnel Agency of Fort Lauderdale, Inc. v. State, Department of Labor & Employment Security, 407 So.2d 249 (Fla. 4th DCA 1981); Florida Gulf Coast Symphony, Inc. v. State, Department of Labor & Employment Security, 386 So.2d 259 (Fla. 2d DCA), petition for review denied, 389 So.2d 1108 (Fla.1980); Jean M. Light Interviewing Services, Inc. v. State, Department of Commerce, 254 So.2d 411 (Fla. 3d DCA 1971). In each of these cases, some of which contained facts less compelling than those in the instant proceeding, the court reversed the special deputy’s finding that the subject workers were employees and held that they were independent contractors as a matter of law.
As reflected by these decisions, the mam disagreement between the courts and the Division of Unemployment Compensation appears to be over the extent of control exercised by the employer. The Division asserts that the periodic inspections of the work and the right to dispense with the services of unsatisfactory workers require a finding of employment, regardless of otherwise overwhelming indicia of an independent contractor relationship. Yet, where, as here, the inspections evince a concern over the final product rather than supervision of the details, the status of an independent contractor is indicated. See T & T Communications. Moreover, one’s “ability to terminate a contract if a desired result is not being accomplished is no different than a contractor’s right to declare his subcontractor in breach of contract for unsatisfactory work.” D. O. Creasman Electronics, Inc. at 898.
The special deputy seemed to place great reliance upon the testimony of the Division’s field auditor who said that William Taschner, appellant’s president, had told her that he treated all the workers the same. At the hearing, Taschner denied having made such a statement and said that he explained to her how the pieceworkers were treated differently. The special deputy had the right to accept the field auditor’s version of what Taschner said, but this after-the-fact statement, by itself, cannot alter the undisputed facts concerning the significant differences between the hourly employees and the pieceworkers. See Sarasota County Chamber of Commerce (purported admissions implying employer-employee relationship held insufficient to outweigh facts demonstrating workers to be independent contractors).
We hold that the pieceworkers are not appellant’s employees for purposes of the unemployment compensation law.
Reversed.
SCHOONOVER and LEHAN, JJ., concur.