FRANK, Judge.
Global Home Care, Inc. (Global) is a home health care agency providing health care and other in-home services to clients. Global is governed by sections 400.461, et seq., Florida Statutes (1985), and is regulated by the Florida Department of Health and Rehabilitative Services, 5 Fla.Admin. Code 10D-68. Global has appealed from a determination of the Division of Unemployment Compensation that its “live-in aides” are employees rather than independent contractors.
An aide filed a claim for unemployment compensation benefits. Following an investigation, an initial determination letter from the Division set forth the finding that aides are employees rather than independent contractors. Following the conduct of a hearing, the hearing officer ratified that determination which was affirmed by the Division of Unemployment Compensation. Global appealed and we reverse.
Approximately five percent of Global’s business derives from the live-in aide services it offers. The aides’ primary functions are to provide companionship to the client and to perform household chores, such as preparing food, attending to nonmedical needs, dressing and running errands for the client. If, after interview, the prospective aides elect to become associated with Global a contract is executed which identifies them as “contract personnel” engaged as “independent contractors.” The aide agrees to provide home care “in coordination with and/or by supervision of others.” The aide agrees to keep records and weekly to provide Global with a report of services provided the client. The aides are required to have a valid driver’s license and car insurance, and are responsible for their own necessary licenses, personal insurance, and tax obligations. After being selected, the aides are given an “orientation” covering such matters as the “job description,” “time slips,” “progress notes,” “dress code,” and “contract.” Global’s policies, practices, and requirements are contained in an orientation packet that also includes instructions, remind *221 ers, and guidelines for conduct on the job and performance of the work.
When a client needs a live-in aide, Global contacts one who is free and offers her the assignment, which she is free to accept or decline. If Global is unable to locate an aide from its own list, it may contact another agency to arrange services for its client. Similarly, the aides, who alone determine their availability for work, can and do solicit similar work with another agency, and as long as there is no conflict they may contemporaneously work elsewhere. Once an aide has accepted an assignment, Global will advise her of the client’s requirements, but the client, together with the aide, will determine exactly how the service is to be performed.
Beginning in June of 1986, the effective date of certain HRS regulations, Global has used registered nurses to oversee the services provided to the clients. This practice constitutes Global’s compliance with the regulations’ requirement that supervision be provided in the home at least once every three months. See 5 Fla.Admin.Code 10D-68.019(2). The nurses’ visits are on an irregular, unscheduled basis, often occurring when the aide is not present. The nurses do not direct the aides on the job. Instead, they question the clients concerning their conditions and circumstances and determine whether the client has any complaints, problems, or other needs.
The aides are paid at a daily rate, the amount being dependent upon experience, capability, and the fee the client is willing to pay. Global sets the rate the client will pay. The aide has the client sign weekly time sheets and submits them to Global. Global then bills the client based on the time sheets and collects payment. Aides are paid on a weekly basis, or whenever time sheets are submitted and processed. No taxes or other deductions are taken from the aide’s pay, and they are provided no fringe benefits.
Based upon our assessment of the record, we have concluded that the special deputy misapplied the governing legal standards to the facts. In particular, the special deputy placed undue significance upon certain aspects of the relationship between Global and the aides resulting from pertinent statutes and HRS regulations. In reaching our conclusion we have followed the often-expressed proposition that the main consideration in evaluating whether employee or independent contractor status exists is control over the mode of performing work. If control is confined only to results, generally the worker is an independent contractor; if control extends to the means used to achieve the results, normally there is an employer-employee relationship. Kane Furniture Corp. v. Miranda, 506 So.2d 1061 (Fla. 2d DCA 1987); D.O. Creasman Electronics, Inc. v. Department of Labor and Employment Security, 458 So.2d 894 (Fla. 2d DCA 1984). In addition, Florida courts apply the test set out in Restatement (Second) of Agency § 220 (1958).*
In this case the analysis is somewhat complicated by the fact that Global must comply with statutory prescriptions and HRS regulations in order to maintain its license as a home health agency. See *222 § 400.474(2)(a), Fla.Stat. (1985). The statute, however, does contemplate that a home health agency can meet the requirements of the act yet still do business through independent contractors. See § 400.462(3), Fla.Stat.; 5 Fla.Admin.Code 10D-68.008(3). “Consistently the courts have held that regulation imposed by governmental authorities does not evidence control by the employer” for the purpose of determining whether a worker is an employee or an independent contractor. NLRB v. Associated Diamond Cabs, Inc., 702 F.2d 912, 922 (11th Cir.1983). The governmental regulations constitute supervision not by the employer but by the state. Local 777, Democratic Union Organizing Committee v. NLRB, 603 F.2d 862, 875 (D.C.Cir.1978).
The special deputy concluded that Global exercises control over the mode of work of the live-in aides stemming from some aspects of the work relationship that are responsive to HRS regulations. Thus, Global orients the aides to its policies and personnel requirements; workers must submit progress reports; on-site supervision is made by registered nurses at irregular intervals; and the aides are provided with written general instructions, reminders, and guidelines. Furthermore, if Global is to maintain compliance with HRS regula-, tions it must impose certain restrictions upon the aides, i.e., prohibiting engaging their own helpers and transporting clients in their own vehicles. Moreover, the aides must notify Global if problems arise on the job or if they will be absent from assigned duty.
The special deputy also found some aspects of the relationship significant that were not responsive to state regulations. These included the dress code and time sheet requirements. The dress code consists of a basic prohibition against wearing flip-flops, jeans, and t-shirts with slogans; and the aide is required to wear a logo pin on the initial visit so that the client can identify her as having been sent by Global. In our view, such minimal guidelines can hardly be deemed control. Similarly, the requirement that aides submit time sheets does not manifest control over the actual performance of work; rather, it is an administrative form providing a basis for the calculation of compensation.
Global does not control the aides beyond the HRS requirements. For instance, although the special deputy found that the initial interview and orientation were indi-cia of control, we have rejected that legal conclusion in other settings. See Kane Furniture Corp. v. Miranda; Ware v. Money-Plan International, Inc., 467 So. 2d 1072 (Fla. 2d DCA 1985); Sarasota County Chamber of Commerce v. Department of Labor and Employment Security, 463 So.2d 461 (Fla. 2d DCA 1985); T & T Communications, Inc. v. Department of Labor and Employment Security, 460 So. 2d 996 (Fla. 2d DCA 1984). Neither is the periodic on-site supervision determinative. Every several months Global sends a registered nurse to the client’s house, often when an aide is not there and on an unscheduled basis. The visits are not surveillance of the aide’s performance but instead constitute monitoring of the client’s condition. See Department of Health and Rehabilitative Services v. Department of Labor and Employment Security, 472 So.2d 1284 (Fla. 1st DCA 1985); Quality Drywall Contractors, Inc. v. Department of Labor and Employment Security, 501 So.2d 144 (Fla. 2d DCA 1987); D. O. Creasman Electronics, Inc. v. Department of Labor and Employment Security.
Global contends that this case is in parallel with Department of Health and Rehabilitative Services v. Department of Labor and Employment Security, 472 So.2d 1284 (Fla. 1st DCA 1985), in which the court found that housekeepers assigned by HRS to families eligible for HRS benefits were independent contractors, and that supervisory visits by HRS personnel constituted simple monitoring of the families’ progress. In this case, as in Department of Health when it was at the administrative level, the special deputy exaggerated the significance of periodic visits and the orientation program for new aides.
The special deputy made additional findings supportive of the aides’ independent contractor status. For example, the aides *223 pursue their occupation with other agencies in addition to Global; the work is performed at a site away from Global's supervision; the client provides the necessary materials and the work place; aides are engaged as needed on a temporary “per job” basis; and Global and the aides believed they were creating an independent contractor relationship. Were we further to expand the analysis in this case by examining each provision of the Restatement’s agency test, the inexorable conclusion would be that the relationship between Global and the live-in aides falls within the traditional independent contractor matrix.
Based upon the above analysis, we reverse the decision of the Division of Unemployment Compensation and remand for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and HALL, J., concur.

The pertinent provisions are as follows:
(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
(b) whether or not the one employed is engaged in a distinct occupation or business;
(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relationship of master and servant; and
(j) whether the principal is or is not in business.
Restatement (Second) of Agency § 220 (1958).